IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| AUTO-OWNERS INSURANCE COMPANY, a Michigan Corporation,<br><br>          Plaintiff,<br><br>v.<br><br>RYAN STEVENS CONSTRUCTION INCORPORATED, a Utah corporation; RYAN STEVENS, an individual and Does 1-10,<br><br>          Defendants. | MEMORANDUM DECISION AND ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT<br><br><br>Case No. 2:15-CV-406 TS<br><br>District Judge Ted Stewart |

This matter is before the Court on Plaintiff's Motion for Summary Judgment. Through its Motion, Plaintiff seeks a declaration that it owes no duty to defend or indemnify Defendants for claims asserted in an underlying state-court action. For the reasons discussed below, the Court will grant Plaintiff's Motion.

I. BACKGROUND

Plaintiff issued a commercial general liability policy to Defendant Ryan Stevens Construction, effective from August 20, 2013, to August 20, 2014 (the "Policy").[1] Under the Policy, Plaintiff "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies."[2]

---

[1] Defendant Ryan Stevens is considered an insured under the Policy as an executive officer of Defendant Ryan Stevens Construction, but only with respect to his duties as an officer or director.

[2] Docket No. 22-3, at 29.

1

Plaintiff also has "the right and duty to defend the insured against any 'suit' seeking those damages."[3]

The Policy applies to "bodily injury" and "property damage" that "is caused by an 'occurrence.'"[4] An "occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."[5] Excluded from coverage is property damage to:

> (6) That particular part of real property on which any insured or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or
> (7) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.[6]

Defendants are named as defendants in a state-court action brought by Robert D. Strieper (the "underlying action"). In that action, Mr. Strieper alleges that he engaged Defendant Stevens and his company to build a home on property the Striepers owned in Kamas, Utah. The property had existing structures, including a garage and attached storage building/workshop. The building had a water tank and a well pump, and was serviced by electrical lines and water pipes.

Mr. Stevens allegedly told Mr. Strieper that he could build a home within Mr. Strieper's $500,000 budget.[7] Plans were then drawn up. As part of the plans, it was agreed that the existing structures on the property would need to be removed. Mr. Strieper alleges that he explained to Defendant Stevens that, if the existing structures were to be removed, that it would

---

[3] *Id.*

[4] *Id.*

[5] *Id.* at 47.

[6] *Id.* at 33.

[7] The Striepers later increased their budget to $525,000.

be necessary to disconnect the water tank, electrical wires, and water lines from the pump before the removal began. The water system was essential to the Striepers' continued use and enjoyment of the property during construction. Mr. Strieper allegedly showed Defendant Stevens the location of the water tank, well pump, electrical lines and water pipes, and Defendant Stevens "stated that he understood and would make sure to protect the Striepers' water tank and water supply during the demolition."[8] At a later site visit, the Striepers again reminded Defendant Stevens about the well and water tank location.

> [H]e was again instructed on how to properly disconnect it and move it prior to the demolition of the existing buildings. He was informed that it would need to be properly disconnected and removed prior to the removal of the garage and storage building or it would be damaged and the Striepers would no longer have running water at their ranch.[9]

Defendant "Stevens promised the Striepers that he fully understood the water supply to the property needed to be protected."[10]

Demolition began on October 4, 2013. Defendant Stevens' crew removed half of the existing structure "and in the process destroyed the water tank, and damaged the water lines leading to the pump, and the wires leading to the electricity for the well pump."[11] Not only did Defendant Stevens not properly disconnect and protect the water supply, "he had his excavators rip out the wires, water line, and tank using a track hoe causing significant damage to the system."[12]

---

[8] Docket No. 22-2, ¶ 103.

[9] *Id.* ¶ 113.

[10] *Id.*

[11] *Id.* ¶ 124.

[12] *Id.* ¶ 256(e).

Defendant Stevens "had not disconnected the water tank or lines as promised."[13] Instead, "his workers had literally torn the tank out of the crawl space of the storage building with the equipment they were using. The tank was destroyed as were the electrical lines and water lines that were running down to the pump . . . ."[14] While Defendant Stevens allegedly told Mr. Strieper that he told his workers to disconnect the water lines and tank, "it was clear by the stretching of the wires and water line, that they had been torn apart while still connected."[15] Defendant "Stevens was on site while the water tank, electrical lines, and water lines were being ripped out and destroyed, eliminating the running water on the property."[16]

Defendant Stevens allegedly stated he would fix the well and get the water running as soon as possible, but this did not happen. Soon after construction started, the arrangement between the Striepers and Defendants fell apart, ultimately leading to the underlying action. The Striepers brought suit against Defendants, asserting causes of action for promissory estoppel, breach of contract, breach of the covenant of good faith and fair dealing, fraudulent misrepresentation, negligent misrepresentation, and conspiracy. The Striepers seek damages for, among other things, the loss of the existing structures and the destruction of the water tank, and damage to the water pump and system.

---

[13] *Id.* ¶ 129.
[14] *Id.*
[15] *Id.*
[16] *Id.* ¶ 125.

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[17]  In considering whether a genuine dispute of material fact exists, the Court determines whether a reasonable jury could return a verdict for the nonmoving party in the face of all the evidence presented.[18]  The Court is required to construe all facts and reasonable inferences in the light most favorable to the nonmoving party.[19]

## III.  DISCUSSION

The parties' arguments focus on the duty to defend.

> The duty to defend is broader than the duty to indemnify, but the insurer's obligation is not unlimited; the duty to defend is measured by the nature and kinds of risks covered by the policy and arises whenever the insurer ascertains facts which give rise to the potential of liability under the policy.[20]

"[A]n insurer has a duty to defend 'when the insurer ascertains facts giving rise to potential liability under the insurance policy.'"[21]  Conversely, when the allegations, if proven, show "there is no potential liability, there is no duty to defend."[22]  "Insurance policies are generally interpreted according to rules of contract interpretation.  Courts interpret words in

---

[17] Fed. R. Civ. P. 56(a).

[18] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Clifton v. Craig*, 924 F.2d 182, 183 (10th Cir. 1991).

[19] *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wright v. Sw. Bell Tel. Co.*, 925 F.2d 1288, 1292 (10th Cir. 1991).

[20] *Deseret Fed. Sav. & Loan Ass'n v. U.S. Fid. & Guar. Co.*, 714 P.2d 1143, 1146 (Utah 1986).

[21] *Basic Research, LLC v. Admiral Ins. Co.*, 297 P.3d 578, 580 (Utah 2013) (quoting *Sharon Steel Corp. v. Aetna Cas. & Sur. Co.*, 931 P.2d 127, 133 (Utah 1997)).

[22] *Deseret Fed. Sav. & Loan Ass'n*, 714 P.2d at 1147.

insurance policies according to their usually accepted meanings and in light of the insurance policy as a whole."[23]

As a general rule, "'an insurer's duty to defend is determined by comparing the language of the insurance policy with the allegations in the complaint.'"[24] "If the language found within the collective 'eight corners' of these documents clearly and unambiguously indicates that a duty to defend does or does not exist, the analysis is complete."[25] However, "[w]here factual questions render coverage uncertain . . . the insurer must defend until those uncertainties can be resolved against coverage."[26]

The policy provides coverage for "bodily injury" or "property damage" that is caused by an "occurrence."[27] "Occurrence" is, in turn, defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."[28] Plaintiff first argues that there is no coverage because the underlying complaint does not allege "bodily injury" or "property damage" caused by an "occurrence."

---

[23] *Utah Farm Bureau Ins. Co. v. Crook*, 980 P.2d 685, 686 (Utah 1999) (citation omitted).

[24] *Fire Ins. Exch. v. Estate of Therkelsen*, 27 P.3d 555, 560 (Utah 2001) (quoting 14 Lee R. Russ & Thomas F. Segalla, Couch on Insurance § 200:18 (3d ed.1999)).

[25] *Equine Assisted Growth & Learning Ass'n v. Carolina Cas. Ins. Co.*, 266 P.3d 733, 737 (Utah 2011).

[26] *Benjamin v. Amica Mut. Ins. Co.*, 140 P.3d 1210, 1215 (Utah 2006).

[27] Docket No. 22-3, at 29.

[28] *Id.* at 47.

The Utah Supreme Court addressed the definition of "occurrence" in *N.M. ex rel. Caleb v. Daniel E.*[29] The court explained the two limited situations where damage to property would be non-accidental and, thus, not an occurrence under Utah law.

> First, harm or damage is not accidental if it is the result of actual design or intended by the insured. Second, harm or damage is not accidental if it is the natural and probable consequence of the insured's act or should have been expected by the insured. The first category presents a factual question as to what the insured intended. The second category generally presents a legal question as to what the average individual would expect to happen under the circumstances.[30]

The question is not "whether an act is intentional or deliberate, but rather whether the result was intended or expected."[31] "Even if an act is not accidental but intended, it may result in an accident if 'the *result* was unexpected [and] unanticipated.'"[32] "The question of whether harm is the natural and probable consequence of an act is determined from the perspective of the insured."[33]

The Second Amended Complaint alleges that the Striepers showed Defendant Stevens the locations of the water tank, well pump, electrical lines, and water pipes. The Striepers explained that if the existing buildings were to be removed, it would be necessary to disconnect the tank, wires, and water lines from the pump before removal began. It is alleged that Mr. Stevens stated he understood and that he "would make sure to protect the Striepers' water tank and water supply during the demolition."[34] Mr. Stevens was again reminded about the well and water tank

---

[29] 175 P.3d 566 (Utah 2008).

[30] *Id.* at 569–70.

[31] *Id.* at 571.

[32] *Id.* (quoting *Handley v. Mut. Life Ins. Co. of N.Y.*, 147 P.2d 319, 322 (Utah 1944)).

[33] *Id.* at 570.

[34] Docket No. 22-2, ¶ 103.

location during a later site visit "and he was again instructed on how to properly disconnect it and move it prior to the demolition of the existing buildings."[35] "Mr. Stevens promised the Striepers that he fully understood that the water supply to the property needed to be protected."[36]

Despite this, Mr. Stevens' crew destroyed the water tank and damaged the water lines leading to the pump, and the wires leading to the electricity for the well pump.[37] Specifically, it is alleged that Mr. Stevens "had his excavators rip out the wires, water line, and tank using a track hoe."[38] It is alleged that "it was clear by the stretching of the wires and water line, that they had been torn apart while still connected."[39] "Mr. Stevens was on site while the water tank, electrical lines, and water lines were being ripped out and destroyed."[40]

The Court agrees that the property damage alleged is the natural and probable consequence of Defendants' acts or should have been expected by Defendants. The property damage was allegedly caused by Defendants using a track hoe to rip out the electrical wires, water line, and water tank while they were still connected. Defendants allegedly did so after Mr. Stevens was shown the location of the water tank, well pump, electrical lines, and water pump, and was specifically told to disconnect the tank, wires, and water lines from the pump before removal began. Mr. Stevens allegedly stated that he understood and would take efforts to protect the water supply. Despite this alleged understanding, the water tank, electrical lines, and water lines were ripped out and destroyed while Mr. Stevens was on site. Even if Defendants did not

---

[35] *Id.* ¶ 113.
[36] *Id.*
[37] *Id.* ¶¶ 124, 129.
[38] *Id.* ¶ 256(e).
[39] *Id.* ¶ 129.
[40] *Id.* ¶ 125.

intend to remove these items, Defendants should have expected that using a track hoe to remove them would result in the property damage alleged by the Striepers.

Defendants argue that summary judgment is not appropriate because there is a dispute as to whether Defendants were instructed to remove the tank, pump, wires, and pipes. This argument, however, ignores the clear allegations in the Second Amended Complaint. As set forth above, Defendants were instructed to remove the water tank and take efforts to protect the other components of the water supply system. The Second Amended Complaint alleges that Defendants did not do as they were instructed.

Defendants also argue that summary judgment is not appropriate because it is possible that Defendants did not intend to deprive Mr. Strieper of the use and enjoyment of his property or cause him to incur the costs associated with repairing or replacing the damaged items. While Defendants are correct that the Court looks at whether the injury was accidental, "the specific type of injury suffered need not be intended or expected by the insured."[41] "As long as some sort of injury was intended or expected, the actual injury suffered is not accidental even if the actual injury differs in nature or degree from what might have been reasonably anticipated."[42] As set forth above, some injury should have been expected as a result of Defendants' actions. Thus, summary judgment is not precluded by the possibility that Defendants did not intend to cause the specific injury alleged by Mr. Strieper. "Only where the injury suffered is completely disproportionate to the injury intended or reasonably expected would the actual injury be

---

[41] *N.M. ex rel. Caleb*, 175 P.3d at 571.

[42] *Id.*

9

considered accidental in nature."[43]  Based upon the allegation in the Second Amended Complaint, the Court concludes that, as a matter of law, there is no occurrence under the policy and Plaintiff has no duty to defend or indemnify.

As a result of the Court's conclusion that the alleged damage was the natural and probable consequence of Defendants' acts or should have been expected by them, the Court declines to address the parties' arguments on whether the damage was intended by Defendants.  As stated by the Utah Supreme Court, this is generally a factual question.  Further, because the parties are in agreement that no extrinsic evidence is required, the Court has limited its analysis to the Policy and the Second Amended Complaint in the underlying action.  The Court has not considered Defendants' Answer to the Second Amended Complaint.

Plaintiff next argues that, even if there was an occurrence, coverage is nonetheless excluded under the policy.  The policy excludes from coverage property damage to:

> (6) That particular part of real property on which any insured or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or
> (7) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.[44]

The Tenth Circuit, applying Kansas law, construed similar exclusions in *Advantage Homebuilding, LLC v. Maryland Casualty Co*.[45]  The court held that exclusion (6) "applies whenever *property damage* arise[s] out of the work of the insured, its contractors, or its

---

[43] *Id.*

[44] Docket No. 22-2 at 33.

[45] 470 F.3d 1003 (10th Cir. 2006).  The exclusion in *Advantage Homebuilding, LLC* were j(5) and j(6), rather than j(6) and j(7), but were substantially the same as the exclusions at issue here.  *See id.* at 1009.

subcontractors while performing operations."[46] Exclusion (7) excludes coverage for "'property damage' that directly or consequentially occurs from the faulty workmanship of the insured and its contractors/subcontractors (i.e., work that 'was incorrectly performed') while the work is ongoing."[47]

Defendants argue that these exclusions do not apply because there is a dispute as to the scope of Defendants' work. The Court disagrees. As set forth above, Defendants were informed that they needed to remove the water tank, and disconnect the electrical wires and water lines from the pump before demolition began. Defendant Stevens allegedly stated that he understood and that he would take the necessary efforts to protect the Striepers' water supply. It is alleged that Defendants failed to do so and, instead, damaged the water tank, electrical lines, and water pipes. Based upon these allegations, the Court must conclude that the scope of work included the removal of the water tank, and the disconnection and protection of the components of the water supply system. The Second Amended Complaint alleges that Defendants failed to properly remove the water tank and did not disconnect the water or electrical lines, but instead used a track hoe to rip them out. This led to the loss of water access on the property and resulted in damages related to the repair of the water tank and pump.

Under either exclusion, these damages are excluded from coverage. The alleged property damage arose out of the operations of Defendants when performing demolition work; work that Mr. Strieper alleges was to include the removal of the water tank and the protection of the water supply through the disconnection of the water and electrical lines. Further, the alleged property

---

[46] *Id.* 1011 (quotation marks omitted).

[47] *Id.* at 1012.

11

damage was the result of work that was allegedly incorrectly performed by Defendants.  Rather than removing the tank and disconnecting the water and electrical lines, Defendants allegedly destroyed the water tank and damaged the water and electrical lines by ripping them out with a track hoe.  As a result, Mr. Strieper was allegedly required to repair the damaged property.  Therefore, even if there was an occurrence under the Policy, coverage is still excluded.

## IV.  CONCLUSION

It is therefore

OREDERED that Plaintiff's Motion for Summary Judgment (Docket No. 22) is GRANTED.  The Clerk of the Court is directed to enter judgment in favor of Plaintiff and against Defendants and close this case forthwith.

DATED this 24th day of May, 2016.

BY THE COURT:

_____
Ted Stewart
United States District Judge